IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRANDY D. S. C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-00575-SH |
| | ) | |
| KILOLO KIJAKAZI,[1] Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>OPINION AND ORDER</u>**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Brandy D. S. C. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.     Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff filed for Title II disability benefits on July 9, 2018, with a protective filing date of July 8, 2018. (R. 13, 149-55.) In her application, Plaintiff alleged she has been unable to work since May 1, 2017, due to conditions including a spinal cord fusion, arthritis, fibromyalgia, chronic back pain, nerve damage, implantation of a spinal cord stimulator, and degenerative disc disease. (R. 149, 174.) Plaintiff was 40 years old at the time of the ALJ's decision. (R. 26, 149.) Plaintiff has less than a high school education and past relevant work as a job coach and laundromat worker. (R. 49-52, 175.)

Plaintiff's claim for benefits was denied initially and upon reconsideration. (R. 76-79, 85-90.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on January 14, 2020. (R. 33-54, 106-07.) The ALJ then issued a decision denying benefits and finding Plaintiff not disabled. (R. 13-26.) The Appeals Council denied review on September 5, 2020 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff timely filed this appeal on November 6, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

### III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2022. (R. 15.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 1, 2017. (R. 16.) At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine and (2) obesity. (R. 16-17.) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 17-19.)

After evaluating the objective and opinion evidence, as well as Plaintiff's testimony, the ALJ concluded that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a)" with the following non-exertional limitations:

> She can occasionally climb ramps and stairs, frequently stoop, kneel, crouch or crawl, but should avoid climbing ladders, ropes and scaffolding and unprotected heights. She can stand for five minutes once an hour . . . but is able to remain on tasks and attentive to duties.

(R. 19.[2]) The ALJ then provided a recitation of the evidence that went into this finding. (R. 19-24.) At step four, the ALJ found Plaintiff unable to perform her past relevant work as a job coach and laundromat worker. (R. 24-25.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work

---

[2] The RFC also stated that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently (R. 19), which would exceed the immediately preceding limitation to sedentary work. *See* 20 C.F.R. § 404.1567(a) (lifting no more than 10 pounds at a time). This appears to be a scrivener's error. Elsewhere in the decision, the ALJ confirmed Plaintiff is limited to sedentary work. (*See, e.g.*, R. 24 (noting the medical evidence supports claimant's ability to perform "sedentary exertion level work"), 25 (discussing limitations eroding Plaintiff's "unskilled sedentary occupational base").) The ALJ's hypothetical to the VE was also consistent with sedentary work. (R. 52 ("lifting no more than ten pounds occasionally, less than ten pounds frequently").) Plaintiff complains of no error, and any error would be harmless given the all-sedentary, step-five jobs found by the ALJ at R. 26. *See* Dictionary of Occupational Titles ("DOT") § 249.587-018, 1991 WL 672349 (4th ed. 1991); *id.* § 209.587-010, 1991 WL 671797; *id.* § 726.684-110, 1991 WL 679616.

4

that existed in significant numbers in the national economy, such as document scanner, clerical mailer, and printer screener.  (R. 25-26.)  Accordingly, the ALJ concluded Plaintiff was not disabled.  (R. 26.)

IV.  **Issues**

Plaintiff raises a single allegation of error in her challenge to the denial of benefits: the ALJ erred in his evaluation of Plaintiff's symptoms under Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017), which rendered his decision unsupported by substantial evidence.  (ECF No. 16 at 9-12.)  The Court finds the ALJ adequately addressed Plaintiff's symptoms, and the Commissioner's decision is affirmed.

V.  **Analysis – the ALJ's Consideration of Plaintiff's Back Pain**

Plaintiff's argument focuses on the ALJ's evaluation of her subjective complaints of pain at step two in the two-part symptom evaluation found in SSR 16-3p.  (*Id.*) Particularly—after restating the analysis and evidence that Plaintiff believes should have weighed in her favor—she argues that the ALJ failed to explain why he found Plaintiff's statements inconsistent and that he failed to "provide specific reasons for the weight given" to her symptoms.  (*Id.*)

A.  **The Two-Step Pain Evaluation.**

When evaluating a claimant's symptoms and subjective complaints, the ALJ uses a two-step process.[3]  *See* SSR 16-3p, at *2; *see also* 20 C.F.R. § 404.1529 (regulation governing the evaluation of symptoms).  First, the medical signs or laboratory findings must show existence of a medical impairment that results from anatomical, physiological,

---

[3] Tenth Circuit precedent has characterized this as a three-step process, citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012).  The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*.  *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished).  But, the term "credibility" is no longer used.  SSR 16-3p, at *2.

or psychological abnormalities that could reasonably be expected to produce the symptoms alleged. SSR 16-3p, at *3. Second, once such an impairment is established, the ALJ must evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's capacity to work. *Id.* at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to the symptoms. *Id.* at *7-8. The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-by-factor recitation of the evidence" is not required "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating" the symptoms. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).

As Plaintiff notes (ECF No. 16 at 9-10, 12), this is not to say an ALJ may simply make "a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, at *10. Rather, the decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent

6

with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

### B. The ALJ's Symptom Evaluation was Proper.

Here, despite Plaintiff's claims, the ALJ's decision adequately accounted for her pain. First, as Plaintiff acknowledges (ECF No. 16 at 9), the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms . . . ." (R. 19-20 (relying on Plaintiff's testimony and *Function Report*).) Second, the ALJ considered whether Plaintiff's subjective statements regarding her physical limitations, when evaluated alongside all other objective evidence, led to the conclusion that Plaintiff was disabled. (R. 20-24.) Though he ultimately found that her "statements about the intensity, persistence, and limiting effects of . . . her symptoms[] . . . are inconsistent because the medical evidence of record . . . does not support [her] allegations" (R. 20), he sufficiently considered Plaintiff's complaints throughout his analysis.

#### 1. Plaintiff's Restatement of Evidence is Unpersuasive.

As a part of her argument that the ALJ's decision contained insufficient explanations as to how Plaintiff's subjective statements were supported or consistent, Plaintiff rehashes the second step of the symptom analysis completed by the ALJ.

First, Plaintiff restates objective medical evidence she believes weighs in favor of a disability finding. (ECF No. 16 at 10.) This restatement of evidence—which the ALJ thoroughly assessed (R. 21-24)—does not show an error in the ALJ's decision. Evidence listed by Plaintiff includes her pain management treatment; her medication regimen—including her use of extended-release morphine; other methods she used to obtain pain

relief, such as epidural steroid injections and a spinal cord stimulator; and objective imaging. (ECF No. 16 at 10.) The ALJ clearly considered this evidence.[4] (R. 21-24; *see also infra* nn. 6, 8-9.) As the Court does not reweigh evidence considered by the ALJ, *Bowman*, 511 F.3d at 1272, Plaintiff's identification of these records does not support reversal.

Second, Plaintiff recounts some of her subjective complaints and maintains that, under SSR 16-3p, "the ALJ [was] to also consider other evidence including from the Claimant." (ECF No. 16 at 11.) She specifically highlights her own statements that she spends most of her day in a recliner; has reported limitations to her doctors; gets very little sleep; and that treatment efforts have failed to relieve her pain. (*Id.*) Again, the ALJ considered Plaintiff's subjective complaints—both those made at hearing and those contained in her *Function Report*. (R. 19-20 (considering the limiting effects of Plaintiff's impairments on her daily activities—such as her sleep—and the failure of her medication regimen).) The ALJ did all that was required of him under SSR 16-3p.

Next, Plaintiff outlines the factors set forth in 20 C.F.R. § 404.1529(c)(3), noting instances where such factors were apparent in the record. (ECF No. 16 at 11.) But, again, such a reiteration was unnecessary; the ALJ considered these factors in his decision. The

---

[4] In her *Opening Brief*, Plaintiff does not argue any evidence was ignored or omitted. (ECF No. 16 at 9-12.) In her *Reply Brief*, however, Plaintiff notes the ALJ did not mention an MRI from December 2019. (ECF No. 20 at 2.) Plaintiff highlights that this MRI revealed disc bulge at L3-L4 and L4-L5, and stenosis at L4-L5 and L5-S1. (*Id.*) While the ALJ did not explicitly note this MRI as a part of his evaluation, he did consider other MRIs that revealed similar findings of disc bulge and stenosis in the L4-L5 and L5-L6 regions. (R. 22-23.) Plaintiff fails to articulate how this slightly different MRI changes the evidence before the ALJ or renders her functionally incapable of performing sedentary work. The Court finds this omission harmless.

ALJ weighed Plaintiff's daily activities (R. 19-20);[5] the location, duration, frequency, and intensity of Plaintiff's symptoms (R. 19-24);[6] precipitating and aggravating factors (R. 20-24);[7] the type, dosage, and effectiveness of the medication Plaintiff took to alleviate her symptoms (R. 20-23);[8] and the treatment she received, outside of medication, for symptom relief (R. 20-23).[9] Only in consideration of this evidence did the ALJ find that

---

[5] The ALJ discussed Plaintiff's hearing testimony that she did not perform household chores, spent most of her day in a recliner icing her back, slept in that recliner at night, had no hobbies and only attended parent-teacher conferences, and did not take care of the family pets. (R. 19-20.) The ALJ also considered Plaintiff's *Function Report*, where she stated she got her children up and ready for school every morning, took them to school, sat on a heating pad the rest of the day, did not require assistance with personal care, prepared simple meals daily, washed dishes, folded laundry, cleaned her house at a slow pace, went outside daily, drove cars, managed household finances, watched television, and occasionally spent time with friends. (R. 20.)

[6] The ALJ considered Plaintiff's statements that she spent her entire day reclined, could barely lift a gallon of milk, could walk/stand for only five minutes, and could only walk halfway around her 2.5-acre property; that walking caused radiating pain; and that standing, lifting, bending, and twisting all caused her to experience pain. (R. 19-20.) The ALJ also considered Plaintiff's medical records, where—though she experienced consistent low back and leg pain exacerbated by movement—she at times presented with "full rotation without pain," ambulated without an assistive device, and had full strength in her lower extremities, full range of motion, negative straight leg raising tests and Patric-Fabere tests, and normal gait, stance, motor strength, and sensation. (R. 21-24.)

[7] The ALJ considered Plaintiff's report that standing, walking, lifting, bending, and twisting all caused her pain (R. 20), as well as treatment notes listing Plaintiff's pain as aggravated by staying in one position for too long, bending and twisting, cold weather, the stimulator implant battery, and straight leg raises on her left side (R. 21-24).

[8] The ALJ noted Plaintiff's use of Oxycodone, "Zipzor," Topamax, Cymbalta, and Morphine. (R. 20-22.) While there were times where Plaintiff's medications were partially effective—such as in August 2017 when she reported that Topamax and Cymbalta were "miracle drugs" (R. 21)—the ALJ acknowledged that no medication or combination of medications ever gave Plaintiff full relief from her pain (R. 20-23).

[9] The ALJ discussed Plaintiff's use of a spinal cord stimulator, epidural steroid injections, and physical therapy, which were not successful in relieving Plaintiff's pain, as well as her spinal fusion. (R. 20-23.) The ALJ also noted that, based on Plaintiff's MRIs, as of March 2019, she was not a candidate for surgery because the MRI did not show any significant findings to explain her symptoms. (R. 23.) The ALJ further noted that Plaintiff's physicians recommended she consider a Nevro spinal cord stimulator, which had not been implemented at the time the record closed. (*Id.*)

Plaintiff's statements regarding the intensity, persistence, and limiting effects of her pain were not wholly consistent with the record. This was an adequate evaluation under 20 C.F.R. § 404.1529.

Finally, Plaintiff points out that SSR 16-3p finds "[p]ersistent attempts to obtain relief of symptoms[,] such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." (ECF No. 16 at 11-12 (quoting SSR 16-3p, at *9).) The ALJ considered Plaintiff's many attempts to find a tolerable medication regime and course of treatment that would provide her relief. *See supra* nn.8 & 9. Nothing more was required.

> **2.    The ALJ Adequately Explained His Reasons for Finding Plaintiff's Subjective Statements Not Wholly Consistent with the Record.**

Considering the extent of the ALJ's evaluation of the medical evidence, the Court also rejects Plaintiff's contention that the ALJ's decision lacks "any explanation as to the weight he gave to the Claimant's statements or any discussion of the evidence as to whether the Claimant's statements were consistent or supported . . . ." (ECF No. 16 at 12.)

As noted *supra*, an ALJ's symptom evaluation must contain specific reasons for the weight given to the individual's symptoms and not be phrased as a single, conclusory statement that the claimant's complaints were considered, or that they are—or are not—consistent or supported. SSR 16-3p, at *10. The ALJ's decision contained such an explanation. In fact, the ALJ explicitly noted that the reason for his findings regarding Plaintiff's statements was their inconsistency with the medical evidence of record, which he proceeded to discuss. (R. 20.) On reply, Plaintiff asserts this reasoning was insufficient, because the ALJ failed to mention a single MRI from December 2019 and

because record evidence supported her contrary interpretation of her own abilities.[10] (ECF No. 20 at 2-4.) The Court has previously addressed the MRI from December 2019, which adds nothing unconsidered to the evidence. (*See supra* n. 4.) Moreover, the ALJ's examination of the subjective and objective evidence in the administrative record was sufficiently thorough (R. 21-24), and the Court finds the ALJ gave adequate reasons for the weight given to Plaintiff's subjective complaints.[11]

## VI.   Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 21st day of March, 2022.

**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[10] Plaintiff points to her diagnosis of failed back surgery, her steroid injections and spinal cord stimulator, her inability to find pain relief, her pain while walking and standing, and her subjective complaints. (ECF No. 20 at 2-4.) Again, the ALJ considered this evidence. (R. 19-24 (noting Plaintiff's subjective reports of pain and limited activity, her failed back surgery/syndrome, her use of steroid injections and spinal cord stimulator, the ineffectiveness of her treatment, and her difficulty standing and walking).)

[11] Not only was the ALJ's analysis supported by his thorough review of record evidence (R. 19-24), but he also set out specific reasons in support of the RFC (R. 24). Specifically, the ALJ found an MRI performed in February 2019 supported the RFC limitations, but physical examinations in the record (many of which were discussed throughout the ALJ's decision (R. 21-24)) revealed Plaintiff also, at times, ambulated without difficulty and presented with no abnormalities in her lower extremities (R. 24). Coupled with his assessment of the medical evidence, the Court finds this bolstered the ALJ's explanation of how he considered Plaintiff's subjective statements under SSR 16-3p.